Michael G. Doan, SBN 175649
Doan, Levinson, & Liljegren, LLP
2850 Pio Pico Drive, Suite D
Carlsbad, CA 92008
Phone (760) 450-3333 • Fax (760) 720-6082
mike@dllfirm.com

Attorney for    Thomas Allen Wold

UNITED STATES BANKRUPTCY COURT

Southern District of California

| | |
|---|---|
| In re: | Case No    01-10687 |
| Thomas Allen Wold, | Chapter    7 |
|     Debtors, | AP No    07-90066 |
| Thomas Allen Wold, | **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF DISCHARGE INJUNCTION** |
|     PLAINTIFF(s)/Debtor(s), | **AUTHORITY:    11 USC 105** |
| vs. | **11 USC 524** |
| Farmers  Insurance Group Federal Credit Union, and DOES 1 through 10, inclusive, | **RELIEF SOUGHT:** |
|     Defendant. | **CIVIL CONTEMPT REMEDIES VIA** |
| | **  -INJUNCTIVE RELIEF** |
| | **  -DECLARATORY RELIEF** |
| | **  -REMEDIAL FINE** |
| | **  -MONETARY DAMAGES** |

**I.**

**INTRODUCTION**

1.    PLAINTIFF/Debtor, Thomas Allen Wold, ("PLAINTIFF"), brings this First Amended

Adversary Proceeding against the DEFENDANT, Farmers Insurance Group Federal

Credit Union, ("DEFENDANT"), for violations of the Discharge Injunction.  The prayer

for relief in this complaint solely requests CIVIL CONTEMPT REMEDIES pursuant to

11 USC 105 and 11 USC 524, in the form of Injunctive Relief, Declaratory Relief,

**ADVERSARY PROCEEDING**

1   Remedial Fine(s), and Monetary Damages.

2                                        **II.**

3                                  **JURISDICTION**

4   2.      Jurisdiction is conferred on this Court pursuant to the provisions of 28 USC 1334 in that

5           this proceeding arises from and is related to the above captioned underlying bankruptcy

6           case under Title 11.

7   3.      This Court has subject matter jurisdiction to hear this case pursuant to 28 USC 1334 and

8           28 USC 157(b)(1), (2)(O), respectively.

9   4.      This matter is primarily a core proceeding under 28 U.S.C. 157 and therefore the

10          Bankruptcy Court has jurisdiction to enter a final order.  It is a core proceeding because

11          PLAINTIFF is asserting rights in this action that are created by 11 USC 105 and 11 USC

12          524 of the Bankruptcy Code, which could only arise in bankruptcy.

13  5.      Venue lies in this District pursuant to 28 USC 1391(b).

14  6.      This adversary is proper in that it seeks injunctive, equitable, declaratory, and monetary

15          relief  per FRBP 7001(1),  FRBP 7001(7), and FRBP 7001(9).

16  7.      FRBP 2016(a) and FRBP 9019 do not apply in this case.

17  8.      The following statutes of Title 11 of the United States Code do not apply to this case:

18          327; 328; 330; and 331.

19  9.      All claims herein are post-petition assets of the PLAINTIFF and not property of the

20          estate.

21  10.     Relief for violations of 11 USC 524 may be brought in Adversary Proceedings, *In re*

22          *Wagner*, 87 B.R. 612, 1988 Bankr. LEXIS 922 (Bankr. C.D. Cal. 1988), *In re Beck*  272

23          B.R. 112, 130 n.25 (Bankr. E.D. Pa 2002).

24  11.     An adversary proceeding provides the parties with more, not less, procedural protections

25          than what are available in a contested matter by way of motion. While a request for a

26          finding of contempt may be brought by motion, neither the Bankruptcy Code or Rules

27          mandates it. *Id.*

28                                        **III.**

**PARTIES**

12.    PLAINTIFF has residence in the City of Oceanside, and was a Debtor under Title 11, of the United States Code.

13.    DEFENDANT, was a creditor in PLAINTIFF'S Bankruptcy and is a corporation with mailing address located at PO Box 36911, Los Angeles, CA  90036.

**IV.**

**FACTS**

14.    Prior to PLAINTIFF'S Bankruptcy Filing, DEFENDANT alleged a claim arose from PLAINTIFF owing money, property, or their equivalent, otherwise defined as "debt(s)."

15.    PLAINTIFF filed for Bankruptcy Protection on October 15, 2001.

16.    PLAINTIFF'S trade account with DEFENDANT was listed in the Bankruptcy Schedules.

17.    DEFENDANT received no less than two notices of the Bankruptcy Filing on October 18, 2001 and January 31, 2002.

18.    PLAINTIFF never entered into an agreement under section 524(c) of the Bankruptcy Code reaffirming his debt to DEFENDANT.

19.    DEFENDANT never had their debt declared non-dischargeable under section 523(a) of the Bankruptcy Code.

20.    A discharge was granted on January 29, 2002.

21.    DEFENDANT **no longer has the right to enforce** their claim or debt against the PLAINTIFF.

22.    The Notice of Chapter 7 Bankruptcy Case(Commencement Notice) received by the DEFENDANT contained a summary of the automatic stay of 11 USC 362, "Creditor may generally not take certain actions. Common examples of prohibited actions include contacting the debtor by mail, telephone or otherwise to demand repayment; taking actions to collect money."  This automatic stay extended to and included the debt owed to DEFENDANT.

23.    Bankruptcy Code Section 524(a)2 "operates as an injunction against the commencement or continuation of an action, **employment of a process**, or an act, **to collect**, or recover,

**ADVERSARY PROCEEDING**

or offset **any such debt as a personal liability of the debtor**...."

24. The Discharge Order and Explanation therein provided "The discharge prohibits any attempt to collect from the debtor(s) a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to **take any other action to collect a discharged debt from the debtor**."  This discharge extended to and included the debt owed to DEFENDANT.

25. Pursuant to *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, (9th Cir. Cal. 2002), Section 362(a) Imposes an Affirmative **Duty to Discontinue** Collection Actions.

26. 11 USC 524(a)(2) simply makes permanent what had previously been temporary under 362(a)(6), *In re Perviz* (2003, BC ND Ohio) 302 BR 357.

27. 11 USC 524 imposes an Affirmative Duty to Discontinue Collection Actions.

28. **Credit Reporting** and **Collection** are two of the most basic components of DEFENDANT'S business.

29. Experian, TransUnion, and Equifax ("Consumer Reporting Agencies"), compile and maintain files on consumers on a nationwide basis as defined by the Fair Credit Reporting Act of 15 U.S.C. §1681a(p).

30. DEFENDANT is a "user of credit information" and "furnisher" of credit information as discussed in the Fair Credit Reporting Act.

31. Credit Reporting Agencies are regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

32. Credit Reporting Agencies  maintain credit files in the ordinary course of business.

33. Credit Reporting Agencies report information furnished by DEFENDANT.

34. Credit Reporting Agencies generate credit scores based upon information furnished to them in part by DEFENDANT.

35. Credit Reporting Agencies report credit scores, liabilities of debtors, financial conditions,

employment information, addresses, and other information so that end users may make educated decisions in terms of risk in extending credit and other services  to debtors.

36.    Credit Reporting Agencies report information on Debtors from a risk standpoint of Debtors and not the financial condition of creditors and the probability of success on their accounts receivables.

37.    Credit reports are not financial statements concerning the viability of financial strength of Creditors.

38.    DEFENDANT creates false information which is derogatory and then furnishes the same to Credit Reporting Agencies with the intention and knowledge that Credit Reporting Agencies will include it in the credit reports they issue.

39.    DEFENDANT knows that the furnishing of such false and derogatory information to Credit Reporting Agencies has a NEGATIVE DIRECT IMPACT ON THE ABILITY OF DEBTORS TO OBTAIN CREDIT AND USUALLY RESULTS IN PAYMENT BY THE DEBTOR OF THE UNDERLYING DISCHARGED DEBT TO CREDITORS IN ORDER TO OBTAIN NEW CREDIT.

**INDUSTRY PRACTICE**

40.    Creditors nationwide routinely and daily furnish information to Credit Reporting Agencies.

41.    The furnishing of information to Credit Reporting Agencies by creditors is an **"employment of a process" directly done to ensure payment of their debt** and is standard industry practice.

42.    The **threat to furnish** a "Past due," "Balance Due," or "Charge off" in a consumer's credit file is an "**employment of a process**"  to collect the debt and may directly influence payment thereon.

43.    The **act of  furnishing** a "Past due," "Balance Due," or "Charge off" in a consumer's credit file is an "**employment of a process**" to collect the debt and may directly influence payment thereon.

44.    Collection letters utilized by creditors and debt collectors frequently threaten to report

outstanding delinquencies to credit reporting agencies to "**employ a process**" to "persuade" consumers to pay their outstanding debts to them.

45. Creditors and debt collectors will often promise to improve a debtor's credit record by reporting a debt as paid in full if the debt is paid. This is also the **employment of a process** to collect a debt

46. The frequency of the use of threats to report delinquencies to credit reporting evidences that creditors and debt collectors believe communicating or threatening to communicate a delinquency to a credit reporting agency is the powerful "**employment of a process**" to collect debts.

47. The following sampling from the internet of various websites which evidences one of the most fundamental collection tools in the collection industry to report balances owed and other derogatory information in the **employment of a process** to collect a debt.

>    http://www.acollectionagency.com/olddebts/credit_bureau_reporting.php,
>    http: //www.sterlingunited.com/services.php
>    http://www.ftc.gov/os/comments/factaidt/000017.pdf
>    http://www.getitpaid.com/companyservices.htm
>    http://www.forius.com/Credit_Reports/ReportingAR.asp

**CASE LAW INTERPRETATION**

48. Reporting a debt to a Credit Bureau is "a powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993). See also *Ditty v. Checkrite, Ltd, Inc*., 973 F. Supp. 1320, 1331 (D. Utah 1997).

49. "There is a distinction between an internal bank accounting procedure and the placing of a notation on an obligor's credit report.  The latter most certainly must be done in an effort to effect collection of the account. Such a notation on a credit report is, in fact, just the type of creditor shenanigans intended to be prohibited by the automatic stay." *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

50. Credit reporting is an effort to collect a debt.  See *Riviera v. Bank One*, 645 F.R.D. 268, 272 (D.PR 1992).  ("Credit reporting is a method to wrench compliance with terms of the

agreement" and "Credit reporting is a method to enforce payment from the

PLAINTIFF.")

### DEFENDANT'S GENERAL COLLECTION PRACTICE

51.  DEFENDANT sends collection letters to its delinquent customers which include the

threat of furnishing "Past due," "Balance Due," or "Charge off" to Credit Reporting

Agencies, in a direct attempt to collect debts.

52.  DEFENDANT trains its telephone debt collectors to use the threat of furnishing "Past

due," "Balance Due," or "Charge off" to Credit Reporting Agencies, in a direct attempt to

collect debts.

53.  DEFENDANT intentionally furnishes "Past due," "Balance due," "Charge off," and other

derogatory remarks to Credit Reporting Agencies with the primary intention of collecting

and ensuring payment of its debt.

54.  The furnishing of information such as "Past due," "Balance due," "Charge off," and other

derogatory remarks by the DEFENDANT to the Credit Bureaus has the direct impact of

forcing debtors to pay such debts.

55.  DEFENDANT has collected vast sums of money as a direct result of using the threat of

furnishing "Past due," "Balance due," or "Charge off" to Credit Reporting Agencies.

56.  DEFENDANT repeatedly misrepresents in its reports to credit reporting agencies that

debts discharged in bankruptcy cases are outstanding, still owed, and past due, because

such misrepresentations, which impair the debtors' ability to obtain credit, are profitable

to DEFENDANT, as they induce debtors to pay their discharged debt.

### DEFENDANT'S ACTS IN THE INSTANT CASE

57.  DEFENDANT attempted to collect the discharged debt by trade line furnishing of

**untruthful and false information since the date of discharge.**

58.  PLAINTIFF was unaware of DEFENDANT'S false furnishing of information until

January, 2005.

59.  Specifically, in January, 2005, PLAINTIFF attempted to apply for a mortgage and Citi

Mortgage obtained PLAINTIFF'(S) credit report wherein DEFENDANT had furnishe the

following false information to the Credit Bureaus in an attempt to collect the discharged

debt:

    a)      "Balance Owing $7,162.00."

    b)      "Delinquent Dates: 1,2005 and 11, 2004."

    c)      "Voluntary Surrender."

60.    The furnishing of this information to Credit Bureaus was not true and is in fact  false

because:

    a)      "Balance Owing" was $0.00 because the debt was discharged in PLAINTIFF'(S)

           bankruptcy;

    b)      There are no "Delinquent Dates" past the discharge of 1/29/02;

    c)      "Discharged in Chapter 7" should have been reported instead of Voluntary

           Surrender in accordance with DEFENDANT'S procedures which it has adopted

           as a furnisher of credit information to Credit Bureaus.

61.    These acts specific acts of DEFENDANT towards the PLAINTIFF, taken together with

DEFENDANTS other aforementioned debt collection practices, are the **employment of a

process** to collect a debt that has been discharged in bankruptcy.

62.    The **employment of process** in furnishing such false information almost caused

PLAINTIFF to submit payment to DEFENDANT on the discharged debt.

63.    Eventually PLAINTIFF realized that such reporting was false, unlawful, and payment

need not be submitted.

64.    PLAINTIFF, on February 16, 2005, then exercised his rights under the Fair Credit

Reporting Act and disputed to the Credit Bureaus the information DEFENDANT had

furnished to the Credit Bureaus about PLAINTIFF.   PLAINTIFF specifically disputed

with the balance and payment.

65.    Under 15 U.S.C. § 1681s-2(b) DEFENDANT was required to respond to the request for

reinvestigation by completing a diligent inquiry into the facts underlying the trade line

and providing accurate information to the consumer reporting agencies regarding that

trade line.

66.   DEFENDANT was contacted by the Credit Bureaus to verify the accuracy of the trade line reporting each time there was a 15 U.S.C. § 1681s reinvestigation and was specifically contacted in this instance.

67.   DEFENDANT intentionally, and with knowledge of PLAINTIFF'(S) bankruptcy discharge, verified the previous false reporting and furnished further false and untrue information in direct response to the Credit Bureaus request for verification of this account.

68.   Despite PLAINTIFF'S dispute of the untruthful and false information, **DEFENDANT took intentional and deliberate acts to continue to collect on the discharged debt.**

69.   After PLAINTIFF'(S) dispute, DEFENDANT intentionally furnished further untruthful and false credit information to Credit Bureaus regarding PLAINTIFF'(S) discharged debt in a direct attempt to influence payment on the same and refused to stop such unlawful reporting until payment was made.  This was again the **employment of a process** to collect a discharged debt.

70.   Specifically, DEFENDANT further caused the following falsities to be reported in March, 2005:

   a)      "Balance Owing $7,162.00."

   b)      "Voluntary Surrender."

71.   The furnishing of this information is not true and false since:

   a)      "Balance Owing" was $0.00 because the debt was discharged in bankruptcy.

   b)      "Discharged in Chapter 7" should have been reported instead of "Voluntary Surrender" in accordance with DEFENDANT'S procedures adopted in conjunction with its agreement to furnish information to Credit Bureaus.

72.   Despite DEFENDANT'S intentional furnishing of false information after PLAINTIFF disputed the same, PLAINTIFF did not give up and again attempted to correct his credit report several times until 2007.

73.   In February, 2007, PLAINTIFF once again attempted to correct the false information on his credit report, this time using a third party, Countrywide.

74. Countrywide disputed the credit report on PLAINTIFF's behalf but was unable to correct the false information DEFENDANT continued to furnish to Credit Bureaus.

75. Although this adversary proceeding was filed many months ago and DEFENDANT was put on undisputable notice the PLAINTIFF disputed this debt, as of the date of this second amended complaint, DEFENDANT continues to falsely furnish a "balance due" and "repossession" to Credit Bureaus.

76. Despite diligent and costly efforts by PLAINTIFF, the credit reports to date continue to contain false and damaging information.

77. DEFENDANT has refused to honor PLAINTIFF'S numerous requests to correct the untruthful and false information reported to the Credit Bureaus.

78. DEFENDANT has intentionally failed to honor PLAINTIFF'S request to discontinue such false and untruthful information from being reported from the Credit Bureaus.

79. There is very little burden on the DEFENDANT to furnish truthful information to the Credit Reporting Agencies.

80. In fact, the DEFENDANT had the option to either supply correct information or ignore the original dispute inquiry.

81. With a few keystrokes on a computer, the DEFENDANT could have furnished truthful information to the Credit Bureaus.

82. If the DEFENDANT simply did not respond to the inquiry, the credit information DEFENDANT furnished to the Credit Bureaus regarding PLAINTIFF would either have been deleted or would have been updated with truthful information.

83. Instead, DEFENDANT purposely furnished false and derogatory credit information regarding PLAINTIFF to Credit Reporting Agencies solely in an attempt to collect a discharged debt.  This is the **employment of a process** to collect a discharged debt.

84. DEFENDANT had no other purpose to furnish such false information.

85. DEFENDANT has repeatedly, on a monthly basis, furnished false information regarding PLAINTIFF to  Credit Reporting Agencies and continues to do so despite the filing of this lawsuit.

86.  DEFENDANT will not furnish truthful information unless PLAINTIFF pays the discharged debt.

87.  DEFENDANT has implemented an "**employment of a process**" to **intentionally furnish false and untruthful information regarding PLAINTIFF to Credit Bureaus in a direct and intentional effort to collect, harass, induce, pressure, and coerce PLAINTIFF into paying a discharged debt** in direct violation of 11 USC 524.

88.  DEFENDANT has enterprised a pattern and practice wherein discharged debt is being paid in exchange for "credit repair."

## NO LAWFUL PURPOSE TO FURNISH FALSE INFORMATION REGARDING PLAINTIFF TO A CREDIT BUREAU

89.  DEFENDANT(S) trade line furnishing of false information concerning the discharged debt **has no lawful purpose** under Federal Laws, State Laws, FTC Commentary, and Trade Association Standards.

90.  The **Bankruptcy Court may discuss a statute**, even if it lacks jurisdiction to adjudicate a claim under it, when the statute is relevant to the proceeding over which the Court has subject matter jurisdiction. *In re Bank of New England Corp.*, 2007 U.S. Dist. LEXIS 8271 at 18 (D. Mass. Feb. 6, 2007).

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 USC 1681

91.  The DEFENDANT has a statutory duty to correct information it furnishes to credit reporting agencies pursuant to 15 USC 1681s-2(a) and 2(b) of the Fair Credit Reporting Act.

92.  Under Nelson v Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002), one primary purpose for the FCRA is to protect consumers against inaccurate and incomplete furnishing of credit information to Credit Bureaus and to require furnishers of such information to conduct a proper reinvestigation and to correct all erroneous consumer credit information after receiving notice of the order of discharge.

93.  Under the FCRA (section 621), the FTC is charged with enforcing and interpreting the

Fair Credit Reporting Act. As such, they issue staff opinion letters, press releases and consumer educational materials.  The FTC Commentary under 16 C.F.R. 600 regarding furnishing of information to Credit Bureaus under the FCRA provides as follows:

a)  § 607(b)(3)(F)(1): A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its **creditors to notify the Credit Bureau when a previously past due account has been paid or discharged in bankruptcy.**)

b)  § 607(b)(3)(F)(2) [A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but **must accurately note the status of the debt (e.g. discharged, voluntarily repaid.)**

c)  § 607(b)(3)(F)(6): *A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself) as long as it **reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt.***

94.  DEFENDANT violated its statutory duty under the Fair Credit Reporting Act by furnishing false, untruthful, and inaccurate information to the Credit Reporting Agencies when it furnished, after discharge,  with regard to PLAINTIFF "balance due" and "repossession."

95.  DEFENDANT has also violated the Fair Credit Reporting Act, 15 U.S.C.§1681s-2 by failing to respond to reinvestigation requests.

96.  DEFENDANT violated their statutory duty to conduct a reasonable reinvestigation of their furnishing of false information regarding PLAINTIFF to Credit Bureaus when notified of PLAINTIFF'S disputes.

97.  DEFENDANT violated their statutory duty to properly correct their false furnishing of credit information regarding PLAINTIFF and failed to notify the Credit Bureau, to which they subscribed, of the need to correct the false credit information.

98.  DEFENDANT violated its statutory duty to utilize proper methods to correct the false credit information it furnished to Credit Bureaus regarding PLAINTIFF.

99.   DEFENDANT violated their statutory duty to utilize proper credit furnishing formatting and methodology that it adopted as a furnisher of information to Credit Bureaus.

100.  DEFENDANT also violated statutory duties and standards when furnishing information to Credit Reporting Agencies which require they furnishing information must be done:

a)   To be conducted in good faith;

b)   To be conducted in such a fashion as to assure the maximum possible accuracy of PLAINTIFF' credit report;

c)   To be conducted in such a way as to not violate any of the general prerequisites for Furnisher' conduct under 15 U.S.C. § 1681s-2(a) or any other statutory requirement for Furnisher of credit information;

d)   To be conducted in a reasonable fashion; and

e)   To be conducted based on information reasonably available to Furnisher.

101.  Following the reinvestigation as stated above, DEFENDANT furnished the erroneous credit information regarding PLAINTIFF with actual knowledge of errors, as stated above, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) and the duties implied to that reinvestigation under 15 U.S.C. § 1681S-2(a)(l)(A).

102.  Following the reinvestigation as alleged above, DEFENDANT furnished the erroneous credit information in violation of the FCRA, 15 U.S.C, 9 1681s-2(b) and the duties required under reinvestigation pursuant to 15 U.S.C. § 1681s-2(a)(l)(A).

103.  Following the reinvestigation and dispatch of notice to DEFENDANT, DEFENDANT furnished credit information regarding PLAINTIFF that was not in fact accurate, as stated above, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) and the duties required under reinvestigation pursuant to 15 U.S.C. § 1681 s-2(a)(l)(B).

104.  Following the reinvestigation, DEFENDANT failed to notify Credit Reporting Agencies that the debt was disputed, in violation of the FCRA,15 U.S.C, § 1681s-2(b) and the duties required under reinvestigation pursuant to 15 U.S.C. § 1681s-2(a)(3).

105.  DEFENDANT'S reinvestigation was per se deficient by reason of these failures of DEFENDANT in their reinvestigation of its trade lines on PLAINTIFF' consumer report.

106.    The DEFENDANT(S) untruthful and false trade line uploads in furnishing a "balance due", failing to report "discharged in bankruptcy", etc., violates a statutory duty to correct information it provides to credit reporting agencies pursuant to 15 USC 1692e(8) of the Fair Debt Collection Practices Act.

## VIOLATIONS OF THE

## CONSUMER CREDIT REPORTING AGENCIES ACT

### CCC 1785.25 et. seq.

107.    The DEFENDANT has a statutory duty to furnish truthful and correct information to credit reporting agencies pursuant to California Civil Code 1785.25 et. seq. (Consumer Credit Reporting Agencies Act).

108.    The DEFENDANT(S) untruthful and false furnishing to Credit Bureaus of credit information regarding PLAINTIFF violates the statutory duty to furnish truthful and correct information to credit reporting agencies pursuant to California Civil Code 1785.25 et. seq.

109.    The DEFENDANT(S) untruthful and false furnishing to Credit Bureaus of credit information regarding PLAINTIFF violates a statutory to not furnish information on a specific transaction if the person knows or should know the information is incomplete or inaccurate pursuant to California Civil Code 1785.25(a).

110.    PLAINTIFF previously disputed the accuracy of the information DEFENDANT furnished to Credit Reporting Agencies as disclosed above.

111.    In response, the Credit Reporting Agencies then advised DEFENDANT that PLAINTIFF disputed the account and false credit reporting.

112.    Despite receipt of the dispute, DEFENDANT verified and repeatedly furnished the false, derogatory information to third persons in violation of CCC 1785.25(c).

## VIOLATIONS OF THE

## FAIR CREDIT BILLING ACT

### 15 USC 1666(a)

113.    The PLAINTIFF did not owe any "undisputed" amounts to DEFENDANT.

114. The PLAINTIFF previously provide the DEFENDANT notice of the amounts between them that were "disputed amounts."

115. The DEFENDANT failed to furnish information to Credit Bureaus showing PLAINTIFF'S account as "disputed."

116. The DEFENDANT(S) untruthful and false furnishing of information to Credit Bureaus regarding PLAINTIFF without "dispute" language violates a statutory duty to correct information it furnishes to credit reporting agencies pursuant to 15 USC 1666(a) of the Fair Credit Billing Act.

## VIOLATIONS OF THE

## FAIR DEBT COLLECTION PRACTICES ACT

### 15 USC 1692

117. The purpose of the FDCPA is to protect consumers from threatening, deceptive, and misleading conduct by debt collectors. *Russell v. Equifax A.R.S.* 74 F.3d 30 (2nd Cir. 1996).

118. The FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with *the collection* of any debt. 15 U.S.C. § 1692e. (emphasis added).

119. Among the collection activity that violates 1692e of the FDCPA is "*communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.*" 15 U.S.C. § 1692e(8).

120. The enactment of 15 U.S.C. § 1692e(8) was an expression by Congress of a public policy that credit reporting does constitute an attempt to collect a debt. Cases interpreting these provisions have agreed that "reporting a debt to a credit reporting agency is a powerful tool designed, in part, to wrench compliance with payment terms . . . *Rivera v. Bank One*, Id; *Sullivan v. Equifax, Inc*., 2002 WL 799856 (E.D. Pa. 2002) (Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of §

1     1692e(8) can subject a debt collector to liability under the FDCPA); *Akalwadi v. Risk*

2     *Management Alternatives, Inc.*, 336 F.Supp.2d 492 n.4 (D. Md. 2004) ("The act of a debt

3     collector reporting the status of a consumer debt to a credit reporting agency is an activity

4     that would certainly appear to meet the statute's requirement that the false, deceptive, or

5     misleading representation or means be "in connection with" the collection of a debt");

6     *Blanks v. Ford Motor Credit*, 2005 WL 43981 *3 (N. D. Tex. Jan. 7, 2005).

7   121.  The position that reporting a debt to a credit reporting agency is an act to collect a debt

8        was endorsed by Judge Curtain in *Finnegan v. Univ. of Rochester Med. Ctr.*, 21

9        F.Supp.2d 223, 229 (W.D.N.Y. 1998). In that case, like *Sullivan v. Equifax, Inc.*, Id., a

10       debtor alleged that a debt collector failed to report a debt as disputed as required by

11       §1692e(8). The Court found that not only was a prima facie case pled for a violation of

12       that provision, but that the complaint also stated a claim under §1692f(1), which prohibits

13       "*[t]he collection* of any amount . . . unless such amount is expressly authorized by the

14       agreement creating the debt or permitted by law." (Emphasis added).

15  122.  When DEFENDANT intentionally furnished false, deceptive, and misleading information

16       to the Credit Reporting Agencies in an attempt to collect on the discharged debt, such

17       conduct was unlawful and in violation of 15 U.S.C. § 1692e. (emphasis added).

## IMPROPER REPORTING CONTRARY TO INDUSTRY STANDARDS

## CDIA, E-OSCAR, METRO2

20  123.  As set forth above, DEFENDANT has furnished untruthful and false information,

21       regarding PLAINTIFF, to the Credit Reporting Agencies contrary to Industry Standards

22       and Practice.

23  124.  Consumer Data Industry Association (CDIA) is an international trade association

24       representing the consumer credit, mortgage reporting, employment and tenant screening

25       and collection service industries. Headquartered in Washington, DC, CDIA provides

26       legislative assistance and a lobbying function to its members, and works with the

27       consumer reporting agencies to establish standards for the consumer reporting industry.

28  125.  E-OSCAR System Support Team is a group that maintains an industry-wide automated

consumer dispute resolution system, which is required by the Fair Credit Reporting Act (FCRA) section 611 (a) (5) (D). This team also meets through the auspices of CDIA and includes representatives from Equifax, Experian, Innovis, and TransUnion.

126. The Automated Universal Data Process (AUD) is used to make corrections that are not supported by your regular automated reporting process. AUD transactions are submitted through e-OSCAR web® the Online Solution for Complete and Accurate Reporting. Reporting errors must be corrected promptly in order to comply with the Fair Credit Reporting Act [section 623 (a) (2) (B)].

127. The intent of the e-OSCAR-web® AUD process is to provide the consumer reporting agencies with a correction to a consumer's file that must be handled outside of the regular automated reporting process. e- OSCAR may not be used to add or create a record on a consumer's file.

128. A data furnisher may furnish and update a consumer's credit information to a Credit Bureau by submitting an Automated Universal Data (AUD) record. The data furnisher uses the system's web-based interactive interface to create the AUD record. The record is routed to one or more consumer reporting agencies, based on the affiliations indicated by the data furnisher during the e-OSCAR registration process and based on the subscriber codes specified in the AUD record.

129. When a consumer contacts a data furnisher and requests a change of information that has been previously reported, the data furnisher researches the account. If the data furnisher verifies that the information in question needs to be changed, the company will use the e-OSCAR system to complete an AUD. The AUD process allows data furnishers to modify existing account information, or to delete the entire account from a consumer's credit report.

130. The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis and TransUnion and is supported by the CDIA. Despite the competitive and organizational barriers within the credit industry, the consumer reporting agencies continue to work together to develop, maintain and enhance an industry-standard

reporting format. The task force's mission is to provide a standardized method for the reporting of accurate, complete and timely data.

131.   The Metro 2 Format is accepted by all consumer reporting agencies and enables the reporting of accurate, complete, and timely credit information.

132.   The Metro 2 Format meets all requirements of the Fair Credit Billing Act (FCBA), the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA) and all applicable state laws.

133.   When all data fields are used accurately and reported each month using the Metro 2 Format, compliance with legislation is ensured.

134.   Pursuant to the Credit Reporting Resource Guide as published by CDIA, the Metro 2 Format requires the following reporting and furnishing of information when a trade line is subject to a bankruptcy:

   a)      Field #25(FCRA Compliance/Date of First Delinquency): "report the **date of the bankruptcy**"

   b)      Field #38 (Consumer Information Indicator): "This special condition may be that a
   **bankruptcy was filed, discharged**, dismissed or withdrawn; a debt was reaffirmed; or the consumer cannot be located or is now located. The indicator should be reported one time and will be deleted only when the appropriate removal code (Q, S, U) is reported.  The Consumer Information Indicator (CII), which is reported in Field 38 of the Base Segment, Field 11 of the J1 Segment, and Field 11 of the J2 Segment, contains a value that indicates a special condition that applies to the specific consumer.  The Consumer Information Indicator must be reported only on the consumer to whom the information applies." Note: The critical piece of displayable information for the bankrupt borrower is the Consumer Information Indicator.

   c)      Field #17(A) (Account Status): For accounts where all associated borrowers are reported with a Bankruptcy Consumer Information Indicator, report the Account

Status Code that represents the **status of the account just prior to notification of the bankruptcy**.

d) Field #21 (Current Balance): Should be reported $0.00. "For that portion of the original trade line which is still included in bankruptcy, report the appropriate Account Status (Field 17A), the appropriate Consumer Information Indicator (Base Segment Field 38 and J1/J2 Segment Field 11), and adjust the Current Balance (Field 21) accordingly

135.    More specifically, the following falsities are presently being furnished versus what lawfully should be furnished:

| a) | Field #25: False Date: | "3/5/7" | Proper Date: | "1/29/02" |
|---|---|---|---|---|
| b) | Field #38: False CII: | "Never Reported" | Proper CII: | "E" |
| c) | Field #17(A) False Status: | "Repossession "<br>"Late 60 days" | Proper Status | " " |
| d) | Field #21 False Balance: | "7,162.00" | Proper Balance: | "$0.00" |

136.    The DEFENDANT(S) untruthful and false trade line uploads runs contrary to industry standards, policies, and procedures, under METRO 2, E-OSCAR, and the Consumer Data Industry Association (CDIA).

137.    DEFENDANT'S furnishing of false information as disclosed above to the Credit Reporting Agencies runs contrary to all Industry Standards and Practice and it the **employment of a process** to collect a discharged debt because DEFENDANT intends PLAINTIFF to pay off the discharged debt in order to get PLAINTIFF to correctly furnish information to Credit Bureaus.  DEFENDANT knows PLAINTIFF is motivated to do this in order to obtain new credit.

## FALSE CREDIT REPORTING VIOLATES
## TITLE 11 OF THE UNITED STATES BANKRUPTCY CODE

138.    Case law is extensive throughout the country holding that false furnishing of information to Credit Bureaus violates the Bankruptcy Code (*In re Torres*, 2007 WL 1300955 (Bkrtcy.S.D.N.Y. May 3, 2007)**,** *Lomeyer v. Alvin's Jewelers (In re Lohmeyer)*, 2007

Bankr. LEXIS 909 (3/13/07)Ohio BK Court(Northern District)(Credit reporting is

enough to defeat motion to dismiss and one does not also need collection letters too),

*Carruthers v. Compass Bank (In re Carruthers)*, 2007 Bankr. LEXIS 200

(1/12/7)(Alabama) (Reporting a balance is sufficient to defeat motion to dismiss),

*Norman v. Applied Card Sys. (In re Norman)*, Case No. 2006 Bankr. LEXIS 2576

(9/26/6) (Alabama)("Charge Off" is sufficient to defeat motion to dismiss), *Carriere v.*

*Proponent Fed. Credit Union,* 2004 U.S. Dist. LEXIS 14095, * 22 -- *23, 2004 WL

1638250 (W.D. La. July 12, 2004) (Virginia) (denied a motion to dismiss on the

pleadings a claim for violation of the discharge injunction involving credit reporting. In

refusing to dismiss PLAINTIFF's bankruptcy claims, the court noted that there is not

even a requirement "that PLAINTIFF plead that the credit furnisher intended to collect a

debt when it filed an adverse report"), *Smith v. American General Finance, Inc.*, Bankr.

No. 00-02375, 2005 Bankr. LEXIS 2481, at *6, 2005 WL 3447645, at *2 (Bankr. N. D.

Iowa Dec. 12, 2005) (the bankruptcy court observed in the same procedural context as

*Lohmeyer* that "**there is some precedent for the finding of a violation of the discharge**

**injunction from a credit report notation made with the intent to collect a debt** . . .

[t]he Motion to Dismiss must be denied.") *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr.

S.D. Ohio 1992)(citing *In re Spaulding*, 116 Bankr. 567, 570 (Bankr. S.D. Ohio 1990)),

in denying the motion to dismiss.

139. Credit Reports that do not reflect a bankruptcy discharge are inaccurate per *White v.*

*Trans Union*, LLC, 462 F. Supp.2d 1079, 1082 (C.D. Cal. 2006).

## NO LAWFUL PURPOSE TO FURNISH FALSE INFORMATION TO BUREAUS

## AND SUCH REPORTING IS COMPLETELY INACCURATE AND MISLEADING

140. Despite the plethora statutes, cases, regulations, and industry standards that

DEFENDANT is acting contrary to, there is also no other lawful purpose which

DEFENDANT can rely upon to justify their trade line reporting of the discharged debt.

141. A credit report that continues to show a discharged debt as "outstanding," "charged off,"

"Balance due," "past due"or does not indicate "discharged in Bankruptcy" is not only

unlawful, but unquestionably inaccurate and misleading, because end users will construe it to mean that the **lender still has the ability to enforce the debt personally** against the debtor, that is, that the debtor has not received a discharge, that the debt has been reaffirmed notwithstanding the discharge, or that the debt has been declared non-dischargeable.

142. A credit report entry that reflects a "past due" account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been "discharged in bankruptcy." **The essential difference is that a "<u>discharged</u>" debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation**. Nothing is now due. **A "<u>past due</u>" debt represents a delinquent but legally enforceable obligation that must be resolved**. This in turn falsely implies that the PLAINTIFF both incurred additional debt after bankruptcy and can not manage their financial affairs. Likewise, it also implies that the debtor has a payment associated with this debt and  may not be able to afford the financing to future creditors.

143. Such False Representations are understood by the credit industry to mean that the debt remained due, owing, and legally collectable.

144. Such False Representations have a direct impact on the PLAINTIFF' credit and FICO scores with the various credit reporting bureaus.

145. Reporting a balance due directly lowers credit and FICO scores since approximately one third of the score is based upon the Debt to Credit Ratio.

146. The lower the FICO score, the harder it is for DEFENDANT to obtain credit.

147. Many post bankruptcy accounts containing false information are later paid to DEFENDANT by inexperienced, frightened, or ill-counseled PLAINTIFFs in order to obtain real estate financing or to improve their credit score for other reasons.

148. DEFENDANT'S acceptance of other post-bankruptcy payments has enabled DEFENDANT to ratify its false credit reporting as intentional actions to collect discharged debts.

**V.**

**CLAIMS FOR RELIEF**

**1)**     **FIRST CLAIM:  <u>VIOLATION OF DISCHARGE INJUNCTION 11 USC 524</u>**

149.   PLAINTIFF realleges and incorporates by reference the above paragraphs as though set forth fully herein.

150.   Bankruptcy Code Section 524(a)2 "operates as an injunction against the commencement or continuation of an action, **employment of a process**, or an act, **to collect**, or recover, or offset **any such debt as a personal liability of the debtor**...."

151.   DEFENDANT has **employed a process** of furnishing false and derogatory information to Credit Reporting Agencies, after discharge and after dispute by the PLAINTIFF, in order to collect a previously discharged debt.

152.   DEFENDANT repeatedly misrepresents and falsely furnishes the status of discharged debts on   discharged accounts, including PLAINTIFF'S, because those misrepresentations are profitable to DEFENDANT since this **employment of a process** to collect discharged debts directly causes many debtors to pay discharged debts in order to obtain credit, improve their credit, improve their credit scores, obtain auto insurance, obtain security clearances or even obtain employment.

153.   Repeatedly misrepresenting the status of discharged debts is an intentional act of DEFENDANT and done directly to collect a discharged debt.

154.   As a result of DEFENDANT'S pattern and practice of its **employment of a process** to collect discharged debt, DEFENDANT has profited on numerous accounts discharged in bankruptcy, including but not limited to, accounts discharged but required to be paid as part of lender credit report, conditions of  real estate refinancing, real estate purchases and sales, credit score repair, and settlement of disputed credit report accounts.

155.   DEFENDANT willfully violated 11 USC 524 by **employing a process** and failing to discontinue the same in an attempt to collect on discharged debt.

156.   DEFENDANT has substantially frustrated the discharge order entered in this case and their conduct constitutes willful violations of the discharge injunction as provided by

Section 524 of Title 11 of the United States Code.

**DAMAGES**

157.  DEFENDANT'S furnishing of such false and inaccurate information has severely damaged the personal and economic reputation of PLAINTIFF and caused severe humiliation, and emotional distress, and mental anguish.

158.  DEFENDANT'S conduct has caused PLAINTIFF unwarranted and unnecessary time, effort, and expense in seeking to enforce rights guaranteed by the Bankruptcy Code.

159.  PLAINTIFF alleges that he has engaged in numerous meetings with their attorney and members of his staff about this matter.

160.  DEFENDANT'S unlawful employment of process to collect on discharged debt has damaged PLAINTIFF'S credit, credit scores, increased costs of borrowing money, insurance premiums, and ability to obtain new credit.

161.  PLAINTIFF has also incurred damages in the form of, transportation costs to the law offices, telephone charges, emotional distress, and attorney fees and costs.

162.  DEFENDANT'S wrongful and illegal acts and omissions give rise to foreseeable damages incurred by the PLAINTIFF.

163.  PLAINTIFF will also face higher costs in many types of consumer transactions as a direct result of the furnishing of false information regarding PLAINTIFF to Credit Bureaus.

164.  PLAINTIFF may also be denied future loans, may be denied employment,  and may be denied future lodging/rent as a direct result of the false trade account furnishing.

165.  DEFENDANT'S bad faith conduct in laying a trap for PLAINTIFF until the eventual day that they need an accurate credit report, and maintaining that trap to pressure the PLAINTIFF to pay a discharged debt, is sufficiently vexatious and oppressive enough for an award of sanctions and or punitive damages.

**VI.**

**PRAYERS FOR RELIEF**

**INJUNCTIVE AND COMPENSATORY CONTEMPT**

**WHEREFORE,** the PLAINTIFF having set forth their claims for relief against the DEFENDANT respectfully prays this Court grant the following CIVIL CONTEMPT

REMEDIES against DEFENDANT:

A.   Civil Compensatory Contempt Damages pursuant to 11 USC 524 and 11 USC 105 of a minimum of $5,000.00 to PLAINTIFF;

B.   Attorney's fees and costs pursuant to 11 USC 524 and 11 USC 105;

C.   $5,000.00 "coercive fine" payable to the Court for every month that DEFENDANT fails to comply with 11 USC 524 and 11 USC 105, *Hicks v. Feiock*, 485 U.S. 624 at 632 (1988); *U.S. v Bayshore Assoc.*, 934 F2d. 1391 (6th Cir. 1991); *In Re Lohmeyers*, 2007 Bankr. LEXIS 909 (Ohio);

D.   Declaratory relief stating that DEFENDANT'S pattern and practice is the employment of process, to collect a debt in violation of 11 USC 524 and 11 USC 105;

E.   Injunctive relief ordering the DEFENDANTS to stop collecting on discharged debts in the manner stated in this Complaint;

F.   Such other and further relief as the Court may deem just and proper.

Dated:   June 29, 2007            Respectfully submitted,

**DOAN, LEVINSON, & LILJEGREN, LLP**


By:   ___/s ecf Michael G. Doan_____
Michael G. Doan, Attorney for PLAINTIFF